·WILEY H. CLIFTON ET AL., EXECUTORS, *v.* TURNER CLARK ET AL.

1. LAWYERS. *Partnership. Contract. Death. When contract terminated by.*

   . Where a contract is made with an attorney at law for professional services and it is contracted or understood that he alone is to render the service, or that his skill is depended upon exclusively, the death of the attorney terminates the contract, although he be a member of a copartnership of lawyers.

2. SAME. *When contract not terminated.*

   A contract for the joint professional services of a copartnership of lawyers, each member of the firm being a general practitioner, is not, however, one in which the continued existence of any one member of the firm is essential to its completion and performance.

3. SAME. *Right of client to abrogate the contract.*

   Where a contract is made for the professional services of a firm of lawyers, and one of them dies before the completion of the services, the client thereupon has the option of abrogating the contract by discharging the survivor, paying for services previously rendered.

4. SAME.  *Duty of survivor.*

On the death of one member of a partnership the survivor is bound unless discharged by the client, to complete all executory contracts of the firm, and he cannot exact from the client compensation for so doing greater than that which the copartnership was to receive.

5. SAME.  *Failure of client to discharge survivor.*

On the death of one member of a law partnership if a client of the firm fail to exercise his right to discharge the survivor and permit him to render the services, he will be liable on the contract made with the firm to the same extent as if neither of the partners had died, and the estate of the deceased member will be entitled to recover its just proportion of the fee.

6. SAME.  *New contract with survivor.*

On the death of one member of a law partnership a new contract between the client and the survivor will not defeat a recovery by the estate of the deceased partner against the client, since the survivor cannot abandon the business of the firm and contract to the detriment of the financial interest of his deceased partner's estate.

7. SAME.  *Right of survivor against estate of decedent.*

The right of a survivor of a legal copartnership to claim an enhanced share of a fee because of services rendered after the death of his late partners is not here involved, the parties in interest having adjusted that matter by agreement.

FROM the chancery court of Lee county.

HON. HENRY L. MULDROW, Chancellor.

Clark and others, appellees, were complainants in the court below.  Clifton and another, executors of the estate of the late Col. Jno. A. Blair, deceased, appellants, were defendants there. The original bill in the cause was not controverted, the defendants, Col. Blair's executors, made their answer (which admitted the bill) a cross bill in which they demanded of and from appellees a much larger sum of money than was sued for by the original bill.  The facts are stated in the opinion of the court.

*McWillie & Thompson,* for appellants.

This case went off in the court below on an erroneous conception, the one about to be mentioned, and which (for the sake of the profession and the widows and children of lawyers) we trust will be exploded.

The proposition that the death of one partner, in a copartnership of lawyers, terminates all contracts made by the firm is based (so far as concerns judicial authority) on the case of *McGill* v. *McGill,* 59 Ky. (2 Metc.), 258. This seems to be the original source of the idea, if it is not the only American case, announcing the doctrine. We have not found any English case on the subject. The case in 19 Vesey, referred to by the Kentucky court, has no application to the question. Looking to the Kentucky case, *McGill* v. *McGill, supra,* we find that it was this: "A law firm was employed to bring a suit, did so and recovered a judgment. Before the collection of the judgment one of the partners (the solvent one) died. The survivor, an insolvent person, collected the judgment and failed to pay the money over to his client. The court decided that the estate of the deceased partner was liable to the client for the fraud of the surviving partner perpetrated after the partnership had been dissolved by the death of the partner whose estate was sued. The opinion of the Kentucky court is distressingly full of pure *obita dicta* some of the same being manifestly out of harmony with the conclusion reached. In the opinion the expression is used that contracts for the exercise of professional skill are personal, and are dissolved like the firm itself, by either party's death, but the court went on to distinguish ministerial duties arising from such a contract and professional skill to be rendered thereunder, and found that the professional skill had been rendered in that case, the judgment having been obtained before the death of the partner, and that the survivor was empowered to perform the mere ministerial duty of collecting the money, and thereby bind the estate of the deceased partner. If the contract was dissolved by the death of one of the part-

ners, how his estate could be bound by it for anything done after the dissolution is hard to comprehend. It must follow from the logic of the Kentucky decision itself, that the contract was not *ipso facto* wholly dissolved by the death of the partner.

We advance this as the true view, the reasonable view: By the death of one member of a copartnership of lawyers, the client is given the right to discharge the survivor, and in case he does so, his only liability is to make compensation for services rendered before the death which dissolved the copartnership. The client, however, must elect. If he permit the survivor to proceed with the litigation, without objection, without discharging him, he will be bound upon the original contract of employment to the same extent as he would have been bound had all the parties lived. The case of *Dowd* v. *Troup,* 57 Miss., 204, is in line with this idea. Instead of being authority (as the court below and the appellees seem to have thought) for the proposition that Colonel Blair's death ended the contract and terminated Mr. Anderson's connection with the litigation in respect to which it was made, it is only an authority which denied Mr. Anderson's right to exact from his clients, something he did not do, additional compensation to that provided for by the terms of the contract.

Judge Campbell says (57 Miss., 206) : "As Troup was willing that Dowd, the survivor of the firm of Sale & Dowd, whom he had employed and paid . . . *should fulfill the obligation of Sale & Dowd,* it was not allowable for Dowd, who was but *discharging his own obligation as a member of the partnership of Sale & Dowd,* to claim of Troup any more for services he rendered after the dissolution of the partnership by the death of Sale, than Sale & Dowd could have claimed if they had rendered all the services. *The death of Sale entitled Troup (the client) to settle with Sale & Dowd for services rendered, and to employ other counsel;* but if Troup was willing that Dowd should stand in the place of Sale & Dowd, and go on with the case as if Sale had not died, Dowd had no claim on Troup for *additional com-*

83 Miss.—29

*pensation,* unless there was a *new contract* between them, by the terms of which he was to have such compensation."

How could it be, if the death of one of the partners absolutely dissolved the firm's contracts, that Dowd by going on with the case would be discharging his own obligations? He could have no obligations under a wholly dissolved contract. If a contract be wholly dissolved, its obligations are ended. It will never do, would be contrary to public policy as well as unjust to clients, to adjudge that as a matter of law the contracts of a law partnership are wholly dissolved by the death of one of its members. The surviving partners are not to be released from all obligations to the clients of their firms. Such is not the law; surviving partners in law copartnerships are fully bound by their firm contracts, are just as much bound after as before the death of one of their associates. The full scope of the law on the subject is, as decided in *Dowd* v. *Troup,* that the client may settle with the survivor, and perhaps with him as representative of himself and the deceased partner, for services rendered, and thus end the contract. This, however, the complainants did not do. Colonel Blair died Nov. 1, 1898, and nothing whatever was done for more than two months thereafter, when, on January 10, 1899, the pretended new contract was made with Anderson. This contract was not a discharge of Anderson, nor was it the expression of an unwillingness for him to proceed under the old one. It did not impose any obligation on Anderson to which he was not already bound. It neither increased or diminished the compensation which he personally was to receive under the original written contract with Blair & Anderson, as modified by the subsequent verbal understanding between the parties. The real question is, whether the survivor of a law partnership can give away that part of the obligations to the firm which by right and in justice belongs to the estate of his deceased partner. He may have large discretion, but he is surely not empowered to give away that which does not belong to him. If it be said that as survivor he had the legal title to the chose in action, the

claim for the fee, we answer that appellee, Clark, Hood & Company, the clients of the firm, knew all the facts, had full knowledge of the rights and equities of Colonel Blair's estate, and that they are not innocent purchasers. They are not purchasers in any sense; they are mere donees, and at the time of the gift they were fully advised that the donor held the subject of the gift in trust, to the extent of two-thirds of it, for others.

But there was no consideration for Anderson's new contract with his clients, it was a *nudum pactum,* and void. It did not, for it could not, release Clark, Hood & Company from liability to Colonel Blair's estate. There certainly was no consideration for such a release, and if a surviving partner may release, in whole or part, an obligation due his late firm, his contract (if he were to make one) seeking to affect such a release would be void if not supported by a consideration. The clients paid Anderson nothing for the supposed release; they continued him bound by all the obligations which were previously imposed upon him. He performed, by their consent, exactly the service which he was to render under the contract with the partnership. It must be remembered, too, that the relation of attorney and client continuously existed (and *Dowd* v. *Troup,* 57 Miss., is authority for this) between Mr. Anderson and Clark, Hood & Company, appellees, from the making of the contract with Blair & Anderson until the litigation in respect to which it was made was ended. There was no break, nor a moment of time when Anderson was not appellees' attorney and they his clients. If, therefore, Anderson had contracted to be paid a larger fee for the identical services, the contract would have been void. *LeCatt* v. *Sallee,* 2 Porter (Ala.), 115; s. c., 29 Am. Dec., 249. In fact, the more one thinks of the contract made by Mr. Anderson with his clients, the appellees, after Colonel Blair's death, the more apparent it becomes that said contract is void. Of course, Mr. Anderson is freed from all moral blame; the mistake he made was in supposing that the death of Colonel Blair wholly dissolved the contract made by appellees with the firm.

Just here let us suppose a case: suppose Anderson in his new contract had stipulated, not alone for his share of the fees but for the entire fee agreed to be paid by the Blair & Anderson contract, and had made the whole of it payable to himself. If he could stipulate for one sum to be paid him as a fee, without regard to the interest of Blair's estate, he could do so for any other sum. Surely a surviving partner of a law firm cannot by the mere form of rewriting a fee contract, already made with his firm, naming himself as the sole payee, deprive the estate of his deceased partner of all rights in the case. We are not considering the equities that would intervene on the partition of a fee for services rendered in part before and in part after the death of one of the partners; the point we make is that the survivor of a law firm cannot wholly ignore or give away the right of the estate of the deceased partner. If Anderson's new contract amounted to anything as between himself and clients it did not affect the rights of Colonel Blair's representatives.

Anderson's second written contract is void; (a) because it was, and is, without consideration; (b) because Mr. Anderson had no right or power to release appellees from their obligations to Colonel Blair's estate, and (c) because there was no consideration for the pretended release even if there were a consideration for the contract itself.

Anderson went on, by consent of his clients, and did his full duty, and the full duty of Blair & Anderson, to them in the litigation for which the fee sued for had been contracted, and the services having been rendered, and having been crowned with success, the fee sued for was earned. Of course this is aside from the extent for which recovery should have been had on the cross bill. The chancellor denied all recovery.

We find authority for the proposition that a contingent fee payable to a copartnership of lawyers is collectible although only one member of the firm rendered services in the case, and that, too, where the clients contracted for the services of all of

them. *Simon* v. *Brashear,* 9 Robinson (La.), 59 ; s. c., 41 Am. Dec., 321.

The Louisiana case is not only much in point, but is historically interesting as well. It was this:

The client employed a firm of lawyers upon a conditional fee to institute and prosecute an action in which the Hon. Robert J. Walker, of Mississippi, United States Senator, and secretary of the United States treasury, during President Polk's administration, was defendant. Mr. Simon, one of the firm of attorneys so employed, was appointed to the supreme bench of Louisiana, and of course his acceptance of the place dissolved the partnership. Thereafter Judge Simon could not, of course, give personal attention to the litigation, but he did employ a substitute, who, with the judge's former partner, prosecuted the cause to a successful ending. It was held that the contingent fee was earned.

Now consider this Louisiana case. It necessarily held that the fee contract did not cease to be operative because of the dissolution of the copartnership between the attorneys. The appointment of Judge Simon to the bench as effectually dissolved the partnership and deprived the clients of his professional skill as would his death. The case, therefore, is a direct authority for the proposition that the inability of one partner in a copartnership of lawyers to render professional services does not dissolve previous contracts for contingent fees.

The case of *Griswold* v. *Wilkinson,* 12 Smed. & M., 669, throws a sidelight on the question. It certainly shows that the dissolution of a firm of lawyers does not release the retiring member from the firm obligations to the client, and if obligations on the one side continue, so they do on the other. Its logic is that the client in such case must act—elect what he will do. If he allows other lawyers to proceed with his litigation, he will be bound by his contract for fees.

Another case, the logic of which is at war with the idea of the death of a lawyer dissolving his contracts for fees to be earned

is *Clendinin* v. *Black,* 2 Bailey (S. Car.) 488; s. c., 23 Am.
Dec., 149.   In that case notes were given a lawyer for services
to be thereafter rendered.   The payee died before completing
the services.   His administrator sued upon the notes.   The
court of original jurisdiction allowed a recovery for the full
sum for which the notes were given, but the supreme court ap-
portioned the fee according to the proportion that the services
actually rendered bore to the entire services for which the con-
tract was made.   This partial recovery was upon the notes.
Of course if the death of a lawyer dissolves his executory fee
contracts, no recovery whatever could have been had.

If the death of a partner in a firm of lawyers dissolves execu-
tory fee contracts, and deprives the representative of the dece-
dent of all rights thereunder, the death of a lawyer practicing
alone would dissolve his contracts as well, for the basis of the
whole idea is the inability to render to the client the professional
skill for which he contracted.

*Green & Green* and *Anderson & Long,* for appellees.

The set-off propounded was a several claim for the services
rendered by Blair in his lifetime, by his executors, and by one
of his executors, Clifton, after his death, under a written con-
tract for contingent fee with Blair & Anderson, a legal firm, for
their legal services, "and the subsequent arrangement aforesaid,"
i. e., the alleged employment by Blair and Clifton, at Blair's
expense to take his (Blair's) place in the case, and for serv-
ices rendered by Clifton thereunder, before and after Blair's
death, under an alleged oral modification of said written con-
tract "with cross complainants," Blair's executors, after Blair's
death.

The suit is to enforce the terms of the written contract with
Blair & Anderson, and for the recovery of the contingent fee,
by the executors of Blair, upon the averment that Anderson, the
surviving partner, had been settled with upon the claim of R. B.
Clark & Company, for about $35,000, and upon the averment

that Clark, Hood & Company were the owners and beneficiaries thereof.

Clifton's employment as an attorney in the case was by Blair, and at Blair's expense. Clifton was a stranger to the contract of employment by the several firms, of the Clarks, of the firm of Blair & Anderson. Clifton does not pretend to have been in privity of contract with Blair or Anderson in that contract prior to Blair's death. He claims that Blair employed him to serve him and be paid by him. Blair was Clifton's client.

As between Blair and Clifton, Blair's death revoked the employment of Clifton. Weeks on Attorneys, sec. 256

As between Blair and the several firms of Clark and Anderson, during Blair's life, and until Blair became totally disabled or died, Blair had the right, with the consent of Anderson and of the Clarks, to employ Clifton to assist him to perform his part of the firm contract, at his own expense. Mechem Agency, sec. 815; *Eggleston* v. *Boardman,* 37 Mich., 14.

The client had the right at any time to object to the performance of the assisting services by Clifton. Id.

Blair had no power to substitute Clifton in his place; that is, to take his place in the case under the contract. "It is a personal duty and trust which cannot be delegated or performed by another." *Morgan* v. *Roberts,* 38 Ill., 65, 84.

An attorney may employ subordinates but not substitutes. Mechem Agency, sec. 815; *McGill* v. *McGill,* 2 Metc. (Ky.), 258; *Ratiff* v. *Baird,* 14 Tex., 43.

It was held, "An attorney at law who is elected judge cannot complete the performance of his subsisting professional contracts by means of another attorney substituted in his stead, although clients assent to the substitution, because what a person cannot do in law by himself he can do by another." Says the court: "It is perfectly clear, therefore, that the plaintiff cannot recover upon the contract on the ground that it was performed by him through the instrumentality of a representative, for, as attorney at law, he could have no representative. He

could not act as an attorney himself, and, of course, he could not have a representative to perform in person." And it was there held that where an attorney was substituted by consent of the clients that the assumpsit was to the substituted attorney and not the ex-attorney, and recovery was had for the fee of the substituted attorney.

That substituted under such circumstances is the attorney of the client. Mechem Agency, p. 677.

When Blair died his contract of employment upon a contingent fee was "totally dissolved." Weeks on Agency, sec. 256; *Dowd* v. *Troup,* 57 Miss., 206; *Cox* v. *Martin,* 75 Miss., 237; *McGill* v. *McGill,* 2 Metc. (Ky.), 258; *Chamberlain* v. *Dunlap,* 22 Am. St. Rep., 811, and note, and cases cited.

Where the employment is upon a contingent fee the attorney must fully perform according to the contingency, before any liability accrues therefor. *Holly Springs* v. *Manning,* 55 Miss,. 380; 3 Am. & Eng. Enc. Law (2nd ed.), 439; 4 Cyc. Law & Proc., p. 991; *Wilson* v. *Barnes,* 13 B. Mon., 330; *Moyers* v. *Graham,* 15 Lee, 57.

Where the attorney dies before completion of the case the client is not liable for the whole absolute compensation agreed on, but only upon a *quantum meruit* for the work already done. *Blalon* v. *King,* 70 Mo. App., 148; *Batte* v. *Fitchner,* 68 Hun., 147; *Controlle* v. *Clusion,* 5 Sneed, 116; *Callahan* v. *Shotwell,* 60 Mo., 398; *Cledenin* v. *Black,* 23 Am. Dec., 149.

Where there is a contingent fee and the client discharges the attorney, wrongfully, the measure of damage is not the amount of the contingent fee, but a reasonable compensation for services rendered. 2 Am. & Eng. Enc. Law (2nd ed.), 427; *Western Union Tel. Co.* v. *Semmes,* 73 Md., 9; *Palsley* v. *Anderson,* 7 W. Va., 202; Mechem Agency, sec. 856; *Eggleston* v. *Boardman,* 37 Mich., 14; *French* v. *Cunningham,* 142 Ind., 632; *Milliard* v. *Jordan,* 76 Mich., 131; *Duke* v. *Harper,* 8 Mo. App., 296; *Quint* v. *Ohper Silver Min. Co.,* 4 Nev., 304; *Scabey* v. *Rose,* 5 Ind., 445; *Bumm* v. *Prother,* 21 Ill., 219.

In the absence of agreement to compromise the client may compromise the case where there is a contingent fee; and in the case at bar the contract contemplates a compromise. In such case the measure of damages was reasonable compensation for services rendered in the absence of an agreement for a liquidated sum. Case last cited, *supra*.

The contract, exhibit A to the cross bill, with Blair & Anderson provides, "And if the litigation is compromised in respect to said claims then the parties of the second part agree to deduct not less than one-fourth nor more than one-half of the contingent fee as may be equitable under the circumstances."

Blair being dead, the parties of the second part could not equitably settle the amount of the contingent fee on a compromise, and this made the contract for the contingent fee incapable of definite ascertainment; in such case the rule is reasonable compensation for services rendered. *Duke v. Harper,* 8 Mo. App., 296, *supra*.

The contract of employment, so far as it relates to the contingent fee on the claim, was a several contract between the several parties to whom the debt was due and Blair & Anderson. To meet this manifest effect of the contract the cross bill avers that Clark, Hood & Company were the owners of this claim of $35,-000 due R. B. Clark & Company, and upon which the contingent fee is sought to be enforced.

That several parties similarly situated and through the same agency employed the same attorneys in the case, does not fix the contract as a joint contract. *Adriatic Fire Ins. Co.* v. *Tredwell,* 108 U. S., 361; Weeks on Attorneys, sec. 336.

The finding of fact upon the conflict of evidence will not be disturbed.

The evidence shows that up to the time of Blair's death the Clarks never employed Clifton to take Blair's place in the case; nor was it contemplated by the Clarks or Anderson that Clifton was to do more than to personally assist Blair. There was no contract or agreement proven to the chancellor's satisfaction that

Clifton was to be the substitute for Blair in the case. If such had been proven then under *Ratliff* v. *Baird,* 14 Tex., 43, the contract would have been with Clifton and not Blair, and Blair's executors would have no cause of action.

These several firms that were parties to this contract of employment of Blair & Anderson deny that they employed Clifton, or authorized B. T. Clark to employ him, either before or after Blair's death.

The evidence shows that R. B. Clark & Company's firm, composed of different members from Clark, Hood & Company, were the owners of the $35,000 claim, a part of which the auditor's allowed, and the allegation of the cross bill to predicate the set-off upon that Clark, Hood & Company were the owners is disproven.

Clark, Hood & Company had no claim probated against Clark's estate when this contract was made; and Clark, Hood & Company then had Blair & Anderson employed upon a salary. After the written contract was made, Clark, Hood & Company did probate about $8,000 of claims, but it was agreed between Blair & Anderson and Clark, Hood & Company that there was to be no contingent fee on this $8,000 and the Joe Clark claim. So there was no liability for any contingent fee by Clark, Hood & Company under the written contract, and no set-off could arise thereunder against them.

The testimony showed that up to Blair's death the firm of Blair & Anderson, with Allen & Robins and Stovall & Williams were the counsel employed in this Clark case, and that the relation of Clifton to it was that he was to assist Blair and was to be paid by him.

Upon Blair's death the question of the relation of counsel and client was taken up, and Anderson was anxious to have Clifton continue in the case. The Clarks did not then know that the employment of Allen & Robins was special, and that they were not to fully prepare and argue the case, as shown, at least impliedly, by their contract. In discussing the rela-

tions it was discovered by the Clarks that the agreement made by Blair for them with Robins was special, and that he was unwilling to act as full counsel in the case without further fee.

The Clarks were unwilling to pay larger fees in the case than had previously been agreed on. So it was that Robins, through Blair's delinquency in not having the contract express the real agreement as understood by the Clarks with Allen & Robins, was unwilling to go on and fully prepare and argue the case, the new burden upon him, without greater fee. Anderson and Clifton and Stribling, Blair's executors, were willing for Anderson and Clifton to go on in the case upon the same fee as was to have been paid Blair & Anderson, but to be divided differently, viz.: one-third to Anderson, one-third to Clifton and one-third to Blair's estate. The Clarks insisted that in the definition of relations that Anderson & Robins should go on and fully prepare and argue the case, and that the readjustment should not increase the amount they were to pay. After much effort to readjust the matter of duties and fees to let Clifton into the case under Clark's employment, it was found impossible to do so without additional expense to the Clarks; and, then, the Clarks terminated the Blair & Anderson contract and made a new contract with Stovall & Williams by discharging them and paying them $500 for services rendered. This was squarely under *Dowd* v. *Troup,* 57 Miss., 206.

There was no ground of complaint in this for Blair's estate. The contingent fee was to be paid to Blair & Anderson upon the contingency that they carried the case through all the courts and recovered. Death had rendered impossible the happening of the contingency, they could not perform the case, though much labor was done, had not even been heard before the auditors, much less carried successfully through all the courts by Blair & Anderson, and according to the express terms of the contract there was nothing due Blair as contingent fee. Blair's misfortune was not only a serious loss to himself but also to his clients, as they relied particularly upon him; and now their case

was to be heard under greatly changed conditions, in that its leader could not execute the plans of battle designed by him. With all deference to the other learned counsel it goes without saying that the death of the general of a campaign on the eve of battle is a great loss to the cause. So it was that under these changed conditions the case had to be tried. It took several weeks to try it before the auditors, and out of the many and large claims propounded several contested ones were allowed and these in much reduced amounts. Neither side was satisfied with the auditor's findings, and each side proposed to renew the conflict in the chancery court. Then it was that the Clarks, without knowledge of their counsel, compromised the case, and even without informing their counsel of the terms of the compromise. That this was not the happening of the contingency of Blair's contract is clear, and that Blair's executors could not complain beyond question.

If for argument sake the contract is held enforceable by Blair's executors, then the measure of damages would be the reasonable worth of Blair & Anderson's service up to the time of Blair's death, less the reasonable value of Anderson's services to that time. The proof is that Blair & Anderson had been fully paid the reasonable worth of their services up to Blair's death.

Argued orally by *R. H. Thompson,* for appellants, and by *W. D. Anderson* and *Marcellus Green,* for appellees.

TRULY, J., delivered the opinion of the court.

The bill of complaint in this case was filed by appellees, doing business under the name "Clark, Hood & Company," against the executors of the estate of J. A. Blair, deceased, to recover the sum of $390.55 on a claim duly probated against said estate, being balance due on open account by Blair at the date of his death. The executors filed a cross bill claiming as an off-set fees due by complainants to Blair for legal services rendered. To this cross bill a demurrer was filed, which being

overruled, answer was made and depositions taken on both sides. On final hearing the chancellor dismissed the cross bill as not being sustained by proof, and granted a decree against the estate of Blair for the amount sued for. From that decree appellants, the executors of Blair, prosecuted this appeal. So far as material to the decision of the case the following are the undisputed facts disclosed by this record:

J. A. Blair and W. D. Anderson composed a firm of lawyers located in Tupelo, and doing business as counsellors and attorneys at law and general practitioners throughout the state of Mississippi. Under the terms of their partnership contract J. A. Blair, the senior member of the firm, received three-fourths of all the fees, and W. D. Anderson, the other member, one-fourth. On September 5, 1895, Clark, Hood & Company, B. T. Clark & Co., and John Clark and B. T. Clark, as surviving partners of R. B. Clark & Co., entered into a written contract of employment with the legal firm of Blair & Anderson, whereby the said Blair & Anderson were employed to manage and conduct certain litigation then pending in which said Clark, Hood & Company, individually and as a firm, and the Clarks, also, as surviving partners, were interested. This litigation, to a large extent, consisted of claims pending against the estate of R. C. Clark, deceased, and certain other matters growing out of the administration of said estates. The consideration of the employment was that the said contracting parties agreed to pay Blair & Anderson a stated fee of $1,200, and a contingent fee of twelve and a half per cent upon all sums which the said attorneys might succeed in having allowed by the court against the estate of R. C. Clark. The pending litigation proceeded for a period of over three years, during more than two years of which time there was a continual taking of depositions in the case needed in the preparation of the same for a hearing before the auditors and the chancery court. During the year 1898 J. A. Blair, the senior member of the firm, being in feeble health, procured the services of W. H. Clifton, a practicing attorney, to

assist him in the preparation and trial of the Clark estate matters, and Clifton did render material assistance. After the case was prepared for trial, but before it came on for final hearing, J. A. Blair died, in November, 1898. After the death of Blair appellees, Clark, Hood & Company, agreed that Clifton and Anderson, in conjunction with their other attorneys, should continue in the prosecution of the pending litigation, provided it would not cost the said Clark, Hood & Company any more money for lawyer's fees. This understanding was agreeable to both Clifton and Anderson, but in consideration of the fact that the death of Blair would entail more labor upon Anderson, the executors of Blair agreed that he, Anderson, should receive one-third of the contingent fee for which the Clarks and Hood had contracted, instead of one-fourth his interest as evidenced by the terms of the copartnership contract between Blair and Anderson. Subsequently, Clark, Hood & Company, on account of a disagreement with another of their lawyers, by which he refused certain additional services which Clark, Hood & Company demanded of him, without additional compensation, refused to abide by the understanding with Clifton and Anderson, and finally attempted, so far as related to the representatives of Blair, to terminate the contract relations which had existed between them and the firm of Blair & Anderson. Thereafter W. H. Clifton still tendered his services and held himself in readiness to discharge the duties of attorney and counsellor at law in and through said litigation, but his services were declined.

On January 10th, after this attempt to abrogate the contract with Blair & Anderson, the Clarks and Hood made another contract with W. D. Anderson by which they employed him for the contingent fee of one-third of twelve and a half per cent of the amount which might be recovered, to proceed with the conducting of the litigation, for the managing of which they had contracted with Blair & Anderson, in the lifetime of Blair. The duties devolved upon Anderson by this new contract were iden-

tical with those imposed upon him by the original contract made with Blair & Anderson, and the compensation was the same agreed on between Anderson and the executors of Blair. After the execution of this new contract with Anderson the litigation proceeded under the management of Anderson and Robins, the other lawyer of Clark, Hood & Company, who had also been employed in the lifetime of Blair. The result of this new arrangement was that Clark, Hood & Company paid out for law-yer's fees a considerbale amount less than they would have been required to pav had Blair lived, and the litigation been proceeded with under the existing contracts. After the final termination of the litigation, which resulted favorably to Clark, Hood & Company, the executors demanded Blair's portion of the contingent fee, which they claimed was due his estate under the contract with Blair & Anderson. This relief, as before stated, was denied by the chancellor, and forms the basis of this appeal.

It is urged by appellants that the chancellor misconceived the law applicable to the state of case made by this record, and that there are several different theories under which they are entitled to recover. It is said that the facts disclosed by the unsuppressed depositions show conclusively that during the lifetime of Blair it was agreed by all parties in interest that, on account of Blair's failing health, Clifton should be substituted in his place and stead, and that this was in effect the making of a new contract. Again it is said, that after Blair's death this agreement was ratified by appellees and Anderson and Clifton, as the substitute of Blair, were continued in charge of said litigation, and thereby appellees became bound to the estate of Blair for the amount of the contingent fee agreed on. Finally it is urged that as appellees continued Anderson in control of the business entrusted to his late firm, they are by their acts estopped from claiming that the contractual relations existing between themselves and Blair and Anderson were terminated by the death of Blair, and that this was the waiver of any rights

which they may have had of dissolving the relation of attorney and client.

The first two contentions are controverted by the appellees, and there is a sharp conflict in the testimony, and if these were the only questions involved in the case we would hesitate to disturb the finding of the chancellor upon the question of fact. It is manifest that, if Clifton was empowered by the clients to take Blair's place after Blair's death, or if they agreed to the substitution of Clifton in the place of Blair in his lifetime, the question would be absolutely free of doubt, because then it would not be a question of the rights arising upon the dissolution of a partnership, but would be a plain, simple suit upon a contract made and entered into between parties still living.

The grave and important question involved in this litigation is presented by the remaining contention of appellants. The case here presented is that of a contract made between clients and a firm of attorneys, general practitioners, who agree to perform certain legal services for certain compensation, partly absolute, in part contingent on ultimate success. Upon death of one of the firm before a final termination of the litigation the survivor completes the services and conducts the litigation to its final and successful conclusion. What is the legal principle applicable to the case stated? The determination of this question necessitates the consideration of the relative rights and duties existing between attorney and client, and, as incidental to the main question, the duties and obligations imposed upon the survivor of the firm of attorneys.

The general rule in reference to contracts for special, personal services is accurately and clearly stated in the case of *Cox* v. *Martin*, 75 Miss., p. 238, where it is said: "It is clear that wherever the continued existence of the particular person contracted with—the contract being executory—is essential to the completion of the contract by reason of his peculiar skill or taste, death terminates the contract; as, for example, contracts of authors to write books, of attorneys to render professional

services, of physicians to cure particular diseases, of teachers to instruct pupils, and of masters to teach apprentices a trade or calling." We adhere to this statement of the law in all cases to which it is applicable, but the case at bar is essentially different in its material facts from the case of *Cox v. Martin.* This is not a contract with any special attorney to render professional services; the continual existence of no particular person is essential to the completion of the contract; the successful consummation of the contract or the rendition of the services contracted for here does not depend upon the peculiar skill or tastes of any named individual; this is a joint contract with a firm of attorneys who are both general practitioners. We reiterate: Where a contract is made with an attorney, and it is specially contracted or understood, that he, alone, is to do the work, or to render the services, or that his skill exclusively is depended upon, and then the death of the attorney terminates the contract, whether he be alone or a member of a firm. And so where a client enters into a contract with a firm of attorneys for certain legal services to be rendered, for a fee stated, or upon an implied promise to pay the value of the services rendered, and contracts, as here, for the services of both members, and one of that firm dies before the contract is finally completed, the client then has the option of abrogating the contract entirely by discharging the survivor, settling for services previously rendered, and employing other counsel to conclude his pending litigation. This we understand to be the full extent of the decision of this court in *Dowd* v. *Troup,* 57 Miss., 206. It is there held that the client permitting the surviving partner to proceed with the services for which the firm had been previously fully paid, could not be called on to pay any additional compensation to the individual member who had in fact performed the services. That case does not pass on the question, nor is it presented for necessary decision here, as to what compensation, if any, the attorneys would be entitled to recover for services rendered previous to the dissolution should. the client exercise his right of choice, and terminate the employ-

ment, where the fee under the contract was entirely contingent upon success.    We intimate no opinion on this point.    But see as illustrative: *Wright* v. *McCampbell,* 75 Tex., 644; *Landa* v. *Shook,* 87 Tex., 609; *Badger* v. *Celler,* 41 Hun., 599; *Smith* v. *Hill,* 13 Ark., 174; *Little* v. *Caldwell,* 101 Cal., 553.

The contract which shows the basis of the case at bar shows that the employment of Blair and Anderson was a joint employment of both members of the firm to render certain specified services and to manage and conduct certain matters then in litigation.    This contract entitled the clients the the services of the firm, but was not a contract for the individual services of any named member of the firm.    Either partner may attend to the business entrusted to a firm of attorneys, for the act of each is the act of all, and such a general contract does not give the client the right to demand that any particular member of the firm shall render the services or conduct the litigation.    *Eggleston* v. *Boardman,* 37 Mich., 14; *Page* v. *Welcapt,* 81 Mass., 536.

So that when one member of a firm of general practitioners, employed under such a contract dies, it becomes the duty of the surviving partner to hold himself in readiness to perform the services required of the firm under the contract, and to complete the unfinished business for the benefit of the client.    This doctrine is impliedly recognized in the case of *Dowd* v. *Troup, supra,* where the surviving partner was denied extra compensation for services rendered after the death of his partner, and this conclusion can only be supported on the ground that the duty of completing the contract devolved on him as surviving partner.    And it is there expressly stated that the surviving partner in rendering such services "was but discharging his own obligation as a member of the partnership."

Inasmuch as a general employment of a firm of attorneys is a joint employment of the members, and it is the duty of each to discharge the joint obligation, one member of the firm cannot, upon dissolution of the partnership, whether by death or other-

wise, refuse to carry to completion all executory contracts which were in force at the date of such dissolution.   *Walker* v. *Goodrich,* 16 Ills., 341; *Polsley* v. *Anderson,* 7 W. Va., 202; *Johnson* v. *Bright,* 15 Ills., 464; *Smith* v. *Hill,* 13 Ark., 173.

With the possible limitation that they might be entitled to some additional compensation from the estate of his deceased partner for services rendered in winding up unfinished business, we see no reason why the general rule applicable to commercial partnerships should not apply to surviving partners of firms of attorneys.   Having jointly undertaken the business entrusted to the partnership, each partner was under obligation to conduct it to the end; they owed this to the client and to each other.   The very basis of every partnership is that there is "an implied obligation on every partner to exercise due diligence and skill, and to devote his services and labors for the promotion of the common benefit of the concern."   *Starr* v. *Case,* Admr., 59 Ind., 491; Story, Part., secs. 182, 331; *Denver* v. *Roane, Exer.,* 99 U. S., 355; *Osment* v. *McElrath,* 68 Cal., 466.

As to the executory contracts only partially fulfilled the death of one partner does not absolve the other from the duty of rendering the services contracted for, and the active functions of the partnership are continued in existence until full performance by the surviving partner.   This principle is applicable to partnerships between attorneys as to executory contracts when the individual personal services of the deceased partner was not especially contracted for.   *Sterne* v. *Goep, Admr.,* 20 Hun., 396; Bates' Part, sec. 711; *Denver* v. *Roane, supra.*

And in upholding the doctrine that this duty devolves on the surviving partner and is one of the risks and obligations assumed by him in the formation of the partnership, the supreme court of California in *Little* v. *Caldwell,* 101 Cal., 553, says:

"This rule is particularly applicable in the settlement of the partnership accounts of attorneys at law, when the firm has been dissolved by the death of one member leaving contracts not fully performed, often constituting a large part of the assets of the

partnership, and which it is the duty of the survivor as far as possible to complete and preserve for the benefit of the firm.

"While it is certainly true when a professional partnership between attorneys at law is dissolved by the death of one, the survivor is entitled to his own future earnings, and is not required to make an allowance in the settlement of the partnership accounts for what may be termed the good will of the partnership, or for the profits of such future business as may have been given to him by former clients of the firm, still, in regard to unfinished business intrusted to the firm, and which the client permits the surviving partner to complete, such contract of employment, although not capable of assignment, is still to be viewed by a court of equity as an asset of the partnership; and it is none the less an equitable asset, when, as in this case, the compensation for such services is entirely contingent upon the final success of the litigation in which the services are to be rendered."

In a class of cases beginning with *McGill* v. *McGill*, 2 Metcalf, 258, it is stated as the general rule that the death of one of the firm of attorneys terminates the contract, but that the firm is entitled to compensaion for services rendered during he continuance of the engagement, and the reason for the conclusion is thus stated:

"A contract with a lawyer, the performance of which requires the exercise of professional skill, is *personal* in its character. The scrvice of the person employed is indispensable in the performance of the contract. Lawyers are employed in professional business because the client has confidence in their integrity and in their qualifications." We have no fault to find with the language here employed in all cases where applicable. A contract with a professional man for his individual services as pointed out in *Cox* v. *Martin, supra,* is *always personal* in the sense that it is terminable by death, and that performance of it cannot be demanded of his personal representatives, and it is also true that such a contract is terminated by death when the service of the person employed is indispensable in the perform-

ance of the contract. But, as herein already pointed out, the service of no special person is "indispensable in the performance of the contract" in a contract, such as the one under review, with a firm of general practitioners contracted with as a firm and not as individuals. The McGill case ignores absolutely the duty and obligation of the surviving partner to the client and to the estate of his deceased partner. To our mind a very important and material consideration, and which must often vary the general rule so broadly stated in that case.

If, after dissolution of the partnership by death or otherwise, the estate of the retiring partner be liable for the tortious or negligent act of his late partner, in reference to partially fulfilled executory contracts as decided in the McGill case, *Wilkinson* v. *Griswold,* 12 Smed. & M., 669, and other cases, it would be illogical and inequitable to deny the representatives of the deceased partner an equitable participation in the compensation accruing by reason of the subsequent performance of such contracts by the surviving partner, and which the survivor was in duty bound to perform for the benefit of the firm.

From the foregoing it necessarily follows that the surviving partner could not of his own motion procure release from this duty or service and refuse to carry out to its ultimate completion, the work which had been intrusted to the firm before the death of his partner. Nor could the client, with the intent of defeating the claim of the estate of the deceased partner, re-employ the survivor of the law firm and thus, by making a new contract, have the benefit, without making compensation therefor of the services of the deceased partner, and by such contract only procure services to which he was already entitled.

Making a concrete application of these general principles to the case at bar, and waiving consideration of all disputed intentions, we find that after the death of Blair, appellees, Clark, Hood & Co., attempted to enter into a new contract with Anderson, the surviving partner, by which Anderson was retained in

their employ and conducted to a satisfactory conclusion the liti-
gation which had been entrusted to the firm of Blair & Anderson.

It is true that the employment of Blair & Anderson was a
joint employment, and that by the death of one of the partners
clients were deprived of his services, but this does not render
them the less liable for the compensation agreed on, for the
good and sufficient reason that one member of the firm did per-
form the services which the firm undertook to render, and, there-
fore, the contract was fulfilled.    It is also true that the employ-
ment of Anderson was by another agreement made after the
death of Blair, but equity and good conscience forbid the sur-
viving party to abandon the business of the firm and contract
to the detriment of the financial interest of his deceased partner's
estate, even when, as in the present case, such action is dictated
by an honest but erroneous conception of the law.    Nor can the
client thus avail himself of the services rendered by the deceased
attorney in his lifetime, and then refuse to pay the compensation
agreed upon, after, by reason of services, the litigation has been
brought to a successful termination.

It may be that the surviving partner might have an equitable
claim for a larger share of the compensation received for his
services rendered after the death of his partner, but that ques-
tion we are not called upon now to decide for the reason that the
executors of Blair agreed with Anderson as to what his compen-
sation should be, and that compensation, the record discloses,
has already been received by Anderson, and it further appears
that with eminent and commendable fairness and consideration,
he expressly disclaims any interest in any fees which may be
found due the estate of Blair by appellees.  Clark, Hood & Com-
pany, did not take advantage of the option of finally terminating
the contractual relations which existed between themselves and
Blair & Anderson, but contented themselves with allowing the
surviving partner to remain in control of and conduct the busi-
ness to its close, and this was a recognition and a continuance of

their original contract, whereby they remain liable to the firm of Blair & Anderson for the full amount of the compensation originally agreed on, and as Anderson acknowledges receipt of his interest in that compensation, the remainder to be ascertained by calculations according to the terms of the contract, is now due the estate of Blair.

It is urged by appellees, that viewing the services rendered by Blair & Anderson in the lifetime of Blair, as a part performance of a contract, that then the estate of Blair is not now entitled to further compensation, because upon *quantum meruit* the firm had been fully paid for all services rendered prior to the death of Blair. This reasoning is without force in the present case. The doctrine of *quantum meruit* can find no lodgment here. There was no partial performance of the contract in the instant case on which a *quantum meruit* could be based or calculated; the contract was fully complied with by the rendition of the required services by the surviving partner. The firm was not discharged and settled with up to date of dissolution, but through one member thereof made full performance of the contract. This contract provided for both an absolute and contingent fee; the absolute fee had been paid, the contingent fee depended upon the successful termination of the suit, all to be due if the suit was won, nothing to be due if the suit was lost. Therefore, the rights of Blair were not fixed until the termination of the litigation, and are now to be ascertained by a calculation upon the amount recovered as the fruits of the services rendered by Blair & Anderson, whether as a firm or individually.

It follows, therefore, that the decree of the chancellor denying the relief prayed for by the cross bill of appellants was erroneous. Appellants, as executors of the estate of J. A. Blair, deceased, are entitled to recover the amount of the contingent fee due under the terms of the contract with Blair & Anderson, after first deducting therefrom the 4 1-4 per cent received by W. B. Anderson since the death of J. A. Blair. All parties necessary

to a final determination and adjudication by a court of equity of the matters here involved are before the court.

The decree of the chancery court is reversed and the cause remanded for further proceedings in accordance herewith.

*Reversed and remanded.*