## Green County, et al. v. Lewis, et al.

(Decided February 19, 1914.)

Appeal from Green Circuit Court.

1. Bonds—Interest Coupons.—Interest coupons attached to principal bonds are a part of the principal bonds to which they are attached and under a contract by which attorneys were to receive a fee depending on the amount of bonds they defeated the collection of this included coupon bonds as well as principal bonds.

2. Attorneys—Employment of Firm—Death of Member—Effect of.—When a firm of attorneys is employed to represent a litigant and one of them dies, the litigant is entitled to have the services of the surviving member and if he is not satisfied with his ability to manage his case, or feels that he ought to have additional counsel to take the place of the deceased member, he should make this request in seasonable time, and it will be too late to raise the question that he does not owe the surviving member the full fee agreed to be paid the firm after the litigation is over and he has accepted the services of the surviving member in satisfaction of the services of the firm.

JEFF HENRY, W. F. MILBY and NOGGLE & GRAHAM for appellants.

ERNEST MACPHERSON, JOHN W. LEWIS for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In 1894 the Green County and Fiscal courts entered into the following written contract with Bacon & McPherson, Col. J. W. Lewis and D. T. Towles, lawyers:

- On motion it is ordered by the court that Bacon & McPherson, Col. J. W. Lewis and Judge D. T. Towles be and they are hereby employed to defend Green County in the suits of Sidebottom against Green County, pending in the Green Circuit Court, and the suit of John Thomas, et al. against Green County, pending in the circuit court of the United States at Louisville, and any other suits that may be brought against Green County on account of the bonds issued in aid of the Cumberland & Ohio R. R. Co. under the following contract, to-wit: 'This contract made the 15th of November, 1894, by and between the Green County and fiscal courts of the first part and D. T. Towles, John W. Lewis and Bacon & McPherson of the second part: Witnesseth: That whereas there is now pending in the circuit court of Green County a certain suit against Green County wherein one Side-

bottom is plaintiff, and in the circuit court of the United States for the Sixth District of Kentucky a certain suit against Green County wherein one Thomas and others are plaintiffs, both of said suits being brought on bonds and coupons alleged to have been issued by said county in aid of the Cumberland & Ohio R. R. Co., so called, and whereas said courts would regard as ruinous to said county the success of the plaintiffs in said causes, and whereas the real questions presented in said causes involve a very large sum of money, and affect and control the total liability of said county by reason of its issue of any and all bonds in aid of said road, and whereas the said courts have adjudged it necessary to employ counsel to defend said suits, the said parties of the first part hereby employe and retain the second parties to defend said causes, and in consideration of their acceptance of said employment the said first parties agree and promise to pay the said second parties for their services as attorneys the sum of twelve hundred dollars, a fee certain, no matter how said causes may result, and further agree to pay said attorneys a sum equal to five percentum of any amount of said bonds or any bonds issued by said Green County in aid of said railroad, which they may save said Green county or the said first parties or as representatives or acting for said Green County in said suits, or which may be controlled or settled by the decisions rendered in said causes or either of them, and second parties are to defend all suits that may be brought against said county on account of said bonds or coupons issued by said county in aid of said road. Witness the hands of the second parties and of the Judge and of the Justices of the Peace of said Green County.' "

The conditions that brought about the execution of this contract are briefly these: In 1871 Green County, under legislative authority, issued bonds in aid of the Cumberland & Ohio Railroad Co. to the amount of two hundred and fifty thousand dollars, and these bonds were purchased by a great number of people. The bonds were payable in twenty years and bore interest at the rate of six per cent per annum from date, interest coupons being attached to the bonds to evidence the amount of interest due and payable each year. Until 1877 Green County paid the interest due on these bonds, but in this year it defaulted in the payment of interest, and thereafter suits were brought by some of the bond holders or

the holders of the interest coupons in the Federal court and also in the State court. The suits in the Federal court were brought by non-residents of the State who were authorized by law to sue in the Federal courts, and the suits in the State courts were brought by citizens of Kentucky who could only seek redress in the State courts.

The appellee attorneys represented the county under this contract in defending all suits brought against the county both in the Federal and State courts, and in 1906 they brought this suit against the county of Green, claiming that under the contract they were entitled to a fee of $30,604.00, less $750.00 that had been paid. In this suit they asserted that they were entitled to the five per cent commission not only on the bonds they succeeded in defeating the collection of, but also on the interest coupons they succeeded in defeating the collection of, and averred that the total amount of the bonds and interest coupons due and unpaid at the time of their employment amounted to $627,090.00.

To this petition a demurrer was sustained, and thereupon the attorneys filed an amended petition for the purpose of setting up more in detail their cause of action and to correct some omissions that occurred in the original petition.

To this petition as amended the county answered, denying that the attorneys were entitled to any compensation under the contract on account of interest-bearing coupons the collection of which they had succeeded in defeating. It was further denied that the indebtedness of the county on account of these bonds was $627,090.00 or more than $426,537.00, and also denied that the attorneys had succeeded in saving the county from the payment of this sum or any other sum. It was further averred that the attorneys had been paid $1,267.50 in place of $750.00.

Thereafter the case was referred to a commissioner to ascertain and report any fact necessary to enable the court to dispose of the matters at issue.

As directed in this order of reference the Commissioner filed a lengthy report, responding in detail to each item in the order of reference. When this report came in certain exceptions were filed to it by both parties, and upon considering the exceptions, Judge McKenzie Moss, who as special judge, heard the case, gave judgment against Green County for the sum of $28,230, with inter-

est from December second, 1912, and from this judgment the county prosecutes this appeal.

In connection with the judgment Judge Moss wrote an opinion stating the facts in the case as they appeared to him and the reasons that influenced his judgment, and we here insert so much of it as throws light on the issues of fact and the conclusions of the court. Judge Moss said:

"The bonds were dated on the first day of April, 1871, and payable twenty years thereafter, the coupons maturing semi-annually. For several years the coupons were paid. It is alleged that after 1877 the county paid no coupons 'but made default, and has since been in default both with respect of payment of principal and interest.' Suits were instituted in the United States courts on coupons and default judgments were rendered to the amount of many thousands of dollars and; later some time in the '80's mandamus proceedings were begun for the purpose of enforcing these judgments.  * * * * Some time prior to November 15, 1894, one Sidebottom brought suit against Green County on a bond for $500.00, and one John Thomas also filed suit in the United States Court (Circuit Court), on bonds amounting to about $40,000.00. On November 15, 1894, Green County entered into the contract with plaintiffs.

"It is earnestly contended by counsel for Green County that under the terms of the contract plaintiffs are entitled to no commission on account of coupons saved to the county, because it contains this language: 'And further agree to pay said attorneys a sum equal to five per centum of any amount of said bonds or any bonds issued by said Green County in aid of said railroad, etc.' That by specifying bonds as the basis for fixing the commissions or per centage, it was meant to exclude coupons. This position does not seem to me to be correct in principle or sound in reason. The coupon is a part of a debt. It is an evidence of the debt, and is supported by the same consideration. For convenience it is detachable from the bond itself and passes title by delivery and is payable to bearer. By one authority the coupon is said to be 'parcel of the bonds, and partakes of their nature,' and by another coupons are referred to as a 'number of smaller bonds, etc.' The contract provides that plaintiffs were to defend all suits, whether on bonds or on coupons —both are named. A recovery against the county in a suit on coupons of the value of $1,000.00 would be just as

detrimental to the county as a recovery on one of the bonds for $1,000.00.

"Under the contract the obligation on the part of plaintiffs to defend in former case was just as binding as in the latter. The contracting parties naturally expected litigation on account of both bonds and coupons, and I do not share with counsel for defendant the opinion, so earnestly argued, that the parties meant to exclude coupons in applying the percentage, in order to arrive at plaintiffs' compensation.

"It appears from this record that after the contract was executed, many suits were brought against the county, and among others was the suit of Shortell v. Green County. This case is reported in 116 Ky., 108, under the style of Green County v. Shortell. The case was twice before the Court of Appeals. The latter citation (opinion by Judge Hobson), shows that 'on the former appeal a demurrer was sustained to the answer on the ground that it did not state the facts relied on sufficiently to raise the question aimed to be presented;' and on the return of the case to the Circuit Court the answer was amended and it was pleaded 'that the conditions upon which the subscriptions were made had not been complied with; that the Cumberland & Ohio Railroad failed to erect or construct a line of railroad through Green County, or within one mile of the town of Greensburg; that there is no railroad now and never was any railroad running through Green County; that no part of the amount subscribed was ever spent in Green County in the construction of any railroad therein, and that the county was not exonerated from the payment of the capital stock voted by it to the Elizabethtown and Tennessee Railroad; that the conditions prescribed in the subscription were all disregarded and never fulfilled; and that the bonds were issued without authority of law, in violation of the rights of the taxpayers of Green County.'

"According to Judge Hobson's opinion the foregoing is the substance of the allegations contained in the answer of Green County. The trial court sustained a demurrer, and the case was appealed. The Court of Appeals reversed the lower court, saying at the conclusion of an opinion of sixteen pages in length, in which the whole subject was elaborately and learnedly discussed, 'We, therefore, conclude that, upon the facts shown, the County of Green is not liable upon the bonds sued on, and that the courts should have overruled the demurrer to

the answer.' After the mandate was filed the case was dismissed and other cases then pending in the Green Circuit Court were dismissed, some, perhaps all, without prejudice. It is contended by counsel for defendant that the decision on the demurrer in the Shortell case had no effect on the merits of the controversy—that it was not a decision on the merits. In the case of Maize v. Bowman, 93 Ky., 205, the Court of Appeals said: 'It is also true that it matters not whether the facts upon which the court acted were shown by evidence or were averred in the petition and admitted by demurrer, the determination of the court is equally conclusive. * * * * In either case the determination *has reached the merits of the case,* and is therefore conclusive of the matter.' And further 'Where, however, the facts are found by the court, whether upon the evidence or by demurrer to a sufficient petition, its judgment is the sentence of the law upon those facts, etc.

"The facts alleged in the answer went to the merits of the case. It was an attack on the validity of the bonds or coupons sued on. The demurrer admitted to the truth of the allegations—and the court held, on the *facts shown,* that Green County was not liable on the bonds—and on the filing of the mandate Shortell dismissed his suit, and others did likewise. The decision in the Shortell case settled the question as to the validity of the bonds. He could not thereafter have recovered, nor could any other bond holder, unless it could have been shown that the road ran through Green County, and that the amount of subscription ($250,000.00) had been expended in the county—unless, in other words, it could have been shown that there was a 'substantial compliance with the contract.' So said the Court of Appeals. Parties litigant, including Shortell, must have understood that they were forever precluded by that decision, and dismissed their suits. I am of the opinion, therefore, that a precedent was established by the Shortell decision, which settled the question as to the invalidity of the bonds, so far as the State courts were concerned. And no other suits were brought in the State courts on these bonds. The liability of Green County on all State-owned bonds was relieved by the decision in this case.

"The amount of plaintiff's compensation under the contract is 'five per centum of any amount of said bonds, or any bonds * * * * which they may save said Green County * * * * or which may be *controlled* or *settled* by

the decision rendered in said causes, or either of them, etc.' It is contended by counsel for defendant that the words 'in said causes, or either of them' had reference to the two suits mentioned in the contract, the Sidebottom and the Thomas case; and as the Sidebottom case was dismissed after the answer was filed, and the Thomas case was decided adversely to Green County, and that as nothing was *saved* the county by the services rendered in these cases, plaintiffs are entitled to no compensation save the $1,200.00 certain fee. I cannot believe that the parties to the contract meant for any such rule of construction to be applied. It seems to me that a fair interpretation of same would lead to the inevitable conclusion that it was intended to provide a test case in which the judgment would constitute a precedent. Plaintiffs were employed to *save* the county from its obligations on these bonds and coupons. The preamble to the contract states that plaintiffs are employed to defend Green County in the suits of F. L. Sidebottom against Green County pending in the Green circuit court, and the suit of John Thomas, et al. against Green County, pending in the circuit court of the United States at Louisville, and *any other suits that may be brought* against Green-County on account of the bonds issued, etc.' And it would be a monstrous injustice to hold that, although plaintiffs may have been successful in obtaining a judgment in one of the many 'other' suits that were brought, thereby setting the question as to the validity of *all* State-owned bonds, yet they would be entitled to no compensation because the much desired precedent was not obtained in either of the *two named suits.*

"So I have reached the conclusion that the plaintiffs were to receive five per cent commission on all bonds and coupons *saved* the county, or which were *controlled* or *settled* by a decision in *any* case brought against the county.

"And, as I have heretofore announced, that, according to my judgment, the decision in the Shortell case settled the question of liability on all bonds and coupons owned in the State, there remains to be determined what was the amount of State-owned bonds and coupons outstanding as existing claims against the county at the time of the filing of the mandate in the Shortell case, towit: November 17, 1903. The Commissioner, in answer to direction No. 8, shows this to be (as amended $635,767.04).

This sum is, however, furthed reduced by deducting from it coupons barred by limitation at date of contract and not afterwards sued on, to-wit: $43,236.92, which leaves the net amount $592,530.80, and five per cent of this sum is $29,626.54, from which must be deducted $750.00 paid, leaving as the true amount which plaintiffs are entitled to recover $28,876.54.''

We agree with the conclusions reached by Judge Moss in this opinion, but will briefly review the questions raised on this appeal by counsel for the county. We do not agree with the construction placed on the contract by counsel for the county. The substance of this contract is that the attorneys should represent the county in all the litigation then pending or might thereafter arise, either in the State or Federal courts, in an effort to enforce the collection of these bonds or the coupons attached thereto; and for this service the attorneys were to be paid a certain fee and a contingent fee of 5 per cent on, any amount they might save the county in suits pending or brought, or that might be saved to the county by the final decision in these suits as they affected other like bonds or coupons. The contingent compensation was not limited to the amount saved on the principal bonds but embraced as well what might be saved on the small coupon bonds attached to and made a part of the principal bonds. When we speak of bonds we reasonably and naturally include the coupon bonds for interest attached to them as well as the principal bonds, and the county was as much interested in defeating these small bonds as it was the large ones.

The second decision of this court in the Shortell case undoubtedly settled the question so far as the resident bond holders were concerned that the county was not liable, and by this decision the county accomplished exactly what could have been accomplished if every resident bond holder had brought a separate suit in the State court and there had been a decision following the Shortell opinion. So that within the meaning of the contract the decision in the Shortell case controlled and settled the rights of the resident bond holders and the county.

The decision in this case did not affect the nonresident bond holders who had the right to bring suit in the Federal court, because the Federal court took a different view of the question from that expressed by the State court and held that the county was liable on the bonds. It was therefore necessary, in order to ascertain

what had been saved to the county by the decision in the Shortell case, to learn the amount of bonds—and by bonds we mean principal bonds as well as coupon bonds —that were held by resident holders whose rights were directly affected by this decision. For the purpose of obtaining this information a number of directions were referred to the Master Commissioner of the court, covering, as we think, every pertinent fact necessary in the ascertainment of the amount due the attorneys for their services. The record does not show that any objection was made to the last order of reference or that the county offered to submit any direction not contained in this order, and it seems that the county only filed exceptions to one item in the very elaborate report filed by the commissioner; nor does it appear that any evidence was taken in support of this exception. We think therefore that it may fairly be said that the commissioner's report covered fully every direction submitted to him and furnished all the facts necessary to enable the court to render a final and correct judgment.

It is next insisted that as the county employed Bacon & Macpherson, J. W. Lewis and D. T. Towles, Macpherson and Lewis are not entitled to recover the full compensation agreed to be paid to these four attorneys. It appears that Towles withdrew from the employment by the consent of the county, and that Bacon died early in the litigation, but there is no suggestion in the record that Macpherson and Lewis did not in a satisfactory way conduct the litigation on the part of the county. There is no claim that the interests of the county suffered in the slightest degree by the withdrawal of Towles or the death of Bacon. Indeed, under the facts shown by the record, it may be taken as conceded that the services of Macpherson and Lewis were entirely satisfactory to the county. When Bacon died, Macpherson, as his partner, had the right, with the consent of the county, to represent the firm of Bacon & Macpherson, and in the absence of objection on the part of the county, Macpherson, as surviving member of the firm, was entitled to the same compensation that the firm would have received if Bacon had lived.

When a party employs a firm of lawyers to represent him and one of them dies, he is entitled to have the services of the surviving member, and if he is not satisfied with the ability of the surviving member to manage his

case or feels that he ought to have additional counsel to take the place of the deceased member of the firm, he should make this request in seasonable time, and it will be too late to raise the question that the surviving member is not entitled to the fee agreed to be paid the firm after the litigation is over and he has accepted the services of the surviving member in satisfaction of the services of the firm.

Upon the whole case, we find no reason for interfering with the judgment, and it is affirmed.