# Westinghouse Electric & Manufacturing Company v. Greenville Coal Company.

(Decided March 22, 1916.)

## Appeal from Muhlenberg Circuit Court.

1.  Contracts—Ambiguity—Parol Evidence.—If the terms of a written contract are ambiguous, indefinite or uncertain as to their

meaning, parol evidence is competent to show the situation of the parties and their relation to the subject matter to aid in the correct interpretation of the contract.

2.   Contracts—Warranty—Parol Evidence.—A warranty in a written contract for the sale of electrical machinery that it will do its work satisfactorily under "normal conditions" without reference where those "normal conditions" are to exist is necessarily vague and uncertain in its meaning; and evidence that the expression "normal conditions" in the contract had reference to "normal conditions" inside a coal mine as distinguished from "normal conditions" on the surface, is competent.

3.   Contracts—Evidence—Competency.—Such evidence was competent in the absence of an allegation of fraud or mistake, not to vary the terms of the contract, but to enable the chancellor to ascertain what was in the minds of the parties at the time.

JOHN J. JACKSON, HOWARD & GRAY and ROBERT HARDISON, JR., for appellant.

JONSON, WICKLIFFE & JONSON and TAYLOR, EAVES & SPARKS for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

This is an equitable action by appellant against appellee seeking judgment on a $2,000.00 note, dated March 4th, 1911, and the enforcement of a contract lien to secure the same existing under the terms of a written contract, dated August 9th, 1910, evidencing the sale by appellant to appellee of certain electrical machinery to be used by appellee in the operation of its coal mine in Muhlenberg county.  The $2,000.00 note represents the last deferred payment on the machinery.

The answer was made a counter-claim and set-off, and it was sought therein to recover damages against the plaintiff because of the breach by it of its contract entered into at the time of the sale of the machinery.

It is alleged that the machinery was purchased by the defendant for the express purpose of being installed and used by it inside of its coal mine, which purpose on its part was known to the plaintiff through its agent making said sale at and before the time of the making thereof; that under the contract it was provided as a part of the consideration for the execution thereof that the machinery so sold would generate and utilize electrical energy to the rated capacity without undue heating, and would do its work in a successful manner, and the defendant says that the machinery so purchased

by it and installed inside its coal mine would not do the work for which it was purchased, and which the plaintiff represented and contracted it would do in a successful manner, or at all; that it would not properly generate electricity and as a result thereof its machinery was constantly out of order and necessitated the stopping of the work in and about the mine at divers times; that immediately after ascertaining said machinery would not do the work for which it was purchased, and which the plaintiff contracted it would do in a. successful manner, it called upon the plaintiff to remedy and correct the defects in such manner as to cause said machinery to do the work in a proper way, and that plaintiff did make divers and numerous efforts to correct said defects so that said machinery would successfully work, but failed to do so, and finally advised the defendant that said machinery would not do the work for which it was purchased while the same was installed inside the mine, and advised the defendant that the said machinery should be taken out of the mine and set up and installed on the surface, and that the defendant, acting upon such advise and suggestion, did so remove the machinery to the surface of the ground and it is all now thereon. That in order to install the machinery on the surface it became necessary for the defendant to build a house to hold the machinery, drill holes from the surface of the earth to the tunneling inside the mine, buy new wire and appliances, remove the machinery from the inside of the mine to the surface and there install it, to shut down its mine for seven days while said machinery was being removed and installed, and employ additional laborers, and do certain other things whereby it was damaged in the sum of something over $2,100.00, giving in detail the items comprising the same.

Under the terms of the contract of purchase it was warranted by the plaintiff:

"That the apparatus herein specified will generate and utilize electrical energy to their rated capacity without undue heating and will do their work in a successful manner, provided they are kept in proper condition and operated under normal conditions and the purchaser supplies competent supervision for their operation."

And it is urgently insisted for appellant that this is the whole contract between the parties, and that as there is no warranty that the machinery would do its work

when installed inside the mine, in the absence of an allegation that such a provision was left out of the contract either by fraud or mistake, that its answer is insufficient.

The decided preponderance of the evidence is to the effect that the machinery was purchased for the purpose of being installed inside the mine to the end that the operation thereof might be less expensive, and that this purpose upon the part of the defendant was well known to the agent making the sale, and that he, knowing this purpose, represented that the machinery was suited to such inside operation and had been manufactured for that purpose. This evidence is given not only by the several officers of the defendant company, but by the representatives of other electrical companies who were on the ground at the time seeking the same contract for their own employers.

The written contract was in the form of a proposal by the appellant to appellee, which provided it was not to become finally effective, even if accepted by the appellee, until it was finally accepted by appellant at its office in Pennsylvania, and this was done; from this it is argued that the contract having been finally completed in the state of Pennsylvania is a Pennsylvania contract and must be governed by the laws of that state.

But in our view of this case it is unnecessary to determine whether it is to be controlled by the laws of Pennsylvania or the laws of Kentucky, for under the evidence submitted and according to the authorities examined the law of Pennsylvania and the law of Kentucky is the same upon the only question necessary to determine.

That question is whether parol evidence is competent where a written contract by its terms is ambiguous, vague, indefinite or uncertain in its meaning, to show the situation of the parties and their relation to the subject matter to aid in the proper construction thereof and to show what was in the minds of the parties at the time.

It needs no argument to show the expression "normal conditions" is necessarily vague and uncertain as applied to the operation of machinery unless it has reference to some particular place or locality; nor is it necessary to argue that "normal conditions" inside a coal mine, which may be very far from the surface of the

earth, are necessarily different from "normal conditions" on the surface, for the evidence in this case unmistakably shows that by reason of the excessive moisture and atmospheric conditions inside the mine "normal conditions" therein were vastly different from "normal conditions" on the surface.

That the rule in this state is that ambiguous and uncertain expressions in contracts may be explained by the introduction of parol testimony, to the end that the true meaning thereof may be ascertained, is not to be doubted, and any extended reference to authorities on this question would seem to be unnecessary. Crane v. Williams, 111 Ky. 271; Skaggs v. Simpson, 110 S. W. 251.

And that the same rule obtains in Pennsylvania will be shown by an examination of the following authorities from that State, to-wit: Burnhart v. Riddle, 29 Pa. 92; Aldridge v. Esshelman, 46 Pa. 420; Church v. Cline, 116 Pa. 146; Butler v. Phillips, 165 Pa. 325; Edmonds v. First Nat'l Bank, 215 Pa. 547.

The evidence was competent, not to show that the contract was different from what it purports on its face to be, not to add anything to it or take anything from it, but to show that the parties were contracting as to "normal conditions" inside the mine and not "normal conditions" elsewhere, that they had in mind "normal conditions" in one place as distinguished from "normal conditions" in another place.

We could hardly imagine a more indefinite or unsatisfactory warranty than one which warrants that machinery will do certain work satisfactorily "under normal conditions," when no place is indicated or suggested where those "normal conditions" are to exist. The very expression is so general, and susceptible of so many applications as to discredit its use in any warranty without additional and more specific language to show the application intended; and even with a bill of particulars attached "normal conditions" might be difficult of ascertainment.

Judgment affirmed.