## Cincinnati, New Orleans & Texas Pacific Railway Company v. Luke.

(Decided April 20, 1916.)

### Appeal from Scott Circuit Court.

1.  Carriers—Validity of Contract That Shipper Must Present Written Claim for Damages Within Prescribed Time.—A reasonable condition in a contract of carriage that the shipper must present in writing his claim for damages before he can maintain an action to recover damages, is valid.

2.  Carriers—Construction of Contract Requiring Shipper to Present Written Claim for Damages.—Where a contract of carriage stipulated that no claim for damages should be allowed unless the shipper gave prompt notice of his claim to the nearest agent, "thereby enabling said carrier to make an inspection of the stock alleged to be damaged," it only embraced claims for damages asserted by a shipper growing out of some physical injury sustained by his stock in the course of transportation or while in the custody or under the control of the carrier, and did not apply to a claim for damages arising out of the failure of the carrier to deliver the stock to the consignees named in the contract.

3.  Carriers—Construction of Contract of Carriage.—In a contract for the shipment of cattle from Georgetown, Ky., the consignees named in the contract being a firm in Chicago, Ill., and also a firm in Cincinnati, O., through which latter place the stock passed on their journey from Georgetown to Chicago, it was the duty of the carrier to deliver the stock to the Cincinnati firm.

4.  Carriers—Construction of Contract of Carriage—Ambiguity—Parol Evidence.—Where a contract of carriage is ambiguous, it should be construed most favorably to the shipper, and if the ambiguity is of such a nature as to require oral evidence to explain its meaning, such evidence may be introduced for this purpose.

J. CRAIG BRADLEY for appellant.

LLEWELLYN F. SINCLAIR for appellee.

OPINION OF THE COURT BY JUDGE CARROLL.—Affirming.

The appellee brought this suit against the appellant company to recover damages growing out of its failure to stop a shipment of cattle at Cincinnati, O. The cattle as claimed by appellee were shipped from Georgetown, Ky., to Chicago, Ill., with the privilege to the shipper of taking them off at Cincinnati, O., through which place they would pass on the journey from Georgetown to Chicago, for the purpose of selling them, if he desired to do so.

But the railroad company shipped the cattle through from Georgetown to Chicago without stopping them in Cincinnati in accordance with the contract and the direction of the shipper; and it is the difference between the Cincinnati market and the Chicago market, as well as the expense attending the shipment of the cattle from Cincinnati to Chicago, that the appellee sought to and did recover in this action. Two grounds are relied on for reversal.

The bill of lading, which manifested the contract between the shipper and the railroad company, stipulated, in clause thirteen, that "no claims for damages which may accrue to said shipper under this contract shall be allowed or paid by said carrier, or claimed, or sued for in any court by said shipper, unless said shipper gives prompt notice of said damages to the nearest agent of said carrier, thereby enabling said carrier to make an inspection of the stock alleged to be damaged; and, unless claim for such loss or damage shall be made in writing and verified by an affidavit of said shipper, or his agent, and filed with the freight claim department of said carrier in the city of Cincinnati, Ohio, within five days from the time said stock is removed from said car or cars." And the trial court sustained a demurrer to an answer pleading and relying on this clause in the contract and the failure of the appellee to give the notice therein specified as a bar to the action.

It is well settled that a reasonable stipulation, in reference to presenting a claim for damages in a contract for carriage is valid and enforcible, and that the shipper must show compliance with its terms before he can successfully maintain an action against the carrier to recover the character of damages contemplated by the condition: Howard & Callahan v. Illinois Central R. R. Co., 161 Ky. 783; Armstrong v. Illinois Central R. R. Co., 162 Ky. 539; Adams Express Co. v. Cook, 162 Ky. 592;

M. K. & T. Ry. Co. v. Harriman Bros., 227 U. S. 657, 57 L. Ed. 690; Adams Express Co. v. Croninger, 226 U. S. 491, 57 L. Ed. 314.

The rule thus being that a condition such as we have described in a contract of shipment is valid, the question arises, did the clause in the contract relied on embrace a claim for damages such as was asserted in this case? We think not. Under a fair construction of this clause in the contract the shipper is only required to give the notice provided for when he is seeking to recover damages on account of some physical injury or loss suffered by the live stock in course of transportation, or while it is in the custody or under the control of the carrier, and it does not apply to or include a claim for damages such as was asserted in this case. The appellee as shipper did not seek to recover damages for any injury, physical or otherwise, sustained by the stock. His claim was based on the ground that the railroad company committed a breach of its contract of carriage in refusing to stop the cattle at Cincinnati, Ohio, for sale.

The other ground relied on for reversal is the failure of the trial court to order a directed verdict in favor of the railroad company. In order to set forth the basis of this contention so that it may be clearly understood, it should be stated that the appellee in his petition alleged that in the contract of carriage the railroad company agreed to carry the cattle to Chicago, Ill., with the privilege on his part of stopping them for sale at Cincinnati, O., and that it refused to stop the cattle at Cincinnati, to his damage in the sum claimed. In its answer, after setting up the interstate nature of the shipment and that it was subject to the rules and regulations concerning interstate shipments made and provided by the laws of the United States, the railroad company averred that the written contract was for shipment direct from Georgetown to Chicago without any stopover at Cincinnati. It further set up that under the provisions of the act of Congress covering interstate commerce, it prepared and filed with the interstate commerce commission, and published and printed a schedule showing the freight rates for interstate shipments in general and for this shipment in particular, as provided in said act; that the rate from Georgetown, Ky., to Chicago, Ill., for the stock in question was contained in the schedule filed by it with the interstate commerce

commission and that it did not provide for any stopover at Cincinnati for the purposes of sale.

It further averred that the contract set up by the appellee, that he should have the privilege of stopping the cattle at Cincinnati, O., for purposes of sale, was not contained in the written contract and would have been a special privilege granted to him, as well as an undue and unreasonable advantage that it was forbidden by the act of Congress and the rules of the interstate commerce commission to grant, and therefore the contract relied on by appellee was void and non-enforcible.

It was further shown in an agreed stipulation of fact that there was no rate on cattle shipped from Georgetown to Chicago providing for a stopover for sale purposes at Cincinnati, and that the contract of shipment and the rate of freight charged was in accordance with the published tariff rate of the company on file with the interstate commerce commission.

The evidence for the appellee showed, without contradiction, that when the contract of shipment was entered into at Georgetown between appellee and the agent of the company at that place, it was understood and agreed between them independent of the written contract that although the cattle were consigned to Chicago, Ill., appellee should have the privilege, if he desired to exercise it, of stopping them on their journey at Cincinnati for purposes of sale. It is further shown, without dispute, in his behalf that he intended to stop the cattle at Cincinnati and there sell them and endeavored so to do, but that the company, in violation of the contract, failed and refused to stop the cattle at Cincinnati and carried them directly from Georgetown to Chicago.

In the bill of lading, which constitutes the written contract between the parties and by the conditions of which their rights must be determined, under the head of "consignee, destination and route," we find this: "Clay, Robinson & Co., Chicago, Ill., care of Green & Embry, Cincinnati, Ohio." This is all that the contract contains in reference to who are the consignees or the place of destination and it will be observed that two consignees are named, one in Chicago, Ill., and the other in Cincinnati, O. Manifestly it was not intended that the stock should be shipped to Clay, Robinson & Co., Chicago, Ill., in care of Green & Embry, of Cincinnati, Ohio, as it appears in the record that Clay, Robinson & Co. are cattle

brokers located in and doing business in Chicago, and that
Green & Embry are cattle brokers located at and doing
business in Cincinnati, and that neither is a branch of
the other. They are independent, distinct concerns, one
conducting its business at Cincinnati and the other at
Chicago.

With this understanding of the record, about which
there is no dispute, and looking to the contract alone
for the purpose of ascertaining who were the consignees
and the destination of the cattle it would appear that
the cattle were consigned to Clay, Robinson & Co.,
Chicago, and to Green & Embry, at Cincinnati. Cincin-
nati is on the route the cattle took on their journey be-
tween Georgetown and Chicago, and under the contract
as the cattle were consigned to Green & Embry at Cin-
cinnati, we think it was the duty of the company to have
delivered them to this firm at that place.

The argument of counsel for the railroad company is
that under the written contract the cattle were to be
shipped directly from Georgetown to Chicago, but the
written contract does not clearly show that Chicago was
the destination of the cattle. On the contrary, we think it
shows that they were to be shipped first to Cincinnati.
Whether they might afterwards be shipped to Chicago
from Cincinnati on the contract made and bill of lading
issued at Georgetown, is a question not necessary to be
decided, as it is not a material one in the case. But we
think it reasonable, and may so assume, that if the cattle
had been put off at Cincinnati, and the shipper after this
was done had concluded to send them to Chicago, he would
need to have made a new contract concerning the carriage
from Cincinnati to Chicago, as his right to ship under the
contract made at Georgetown would have ended when
the cattle were taken from the cars at Cincinnati and de-
livered to the party named as consignee at that place.

A large part of the argument of counsel for the rail-
road company is taken up with a discussion of the con-
tention that under the interstate commerce act, and under
the rules and regulations relating thereto, the terms of a
written contract, such as the bill of lading entered into
between the shipper and the railroad company, cannot be
varied or contradicted by parol agreement made between
the shipper and the agent of the company with whom the
initial contract is made. Whether under any circum-
stances a written contract may be varied or contradicted

by oral agreements between the shipper and the agent of the company, we do not deem it necessary to express an opinion concerning, because we think the written contract itself shows that the stock were consigned to Green & Embry at Cincinnati, and as this place was between Georgetown and Chicago, it was the duty of the company to deliver the stock to the consignee, Green & Embry, at Cincinnati.

We are further of the opinion that if it should be considered that the contract is ambiguous in designating the consignees, or in not clearly showing who the consignees were or the place of destination, this ambiguity should be construed most favorably to the shipper, and if the ambiguity or uncertainty in the contract is of such a nature as to require oral evidence to explain its meaning or make it clear, such evidence may be introduced for this purpose. A railroad company cannot prepare and hand to the shipper for his signature an uncertain or ambiguous contract and then deny the shipper the right to make plain what was the understanding between him and the agent at the time the contract was entered into.

Wherefore, the judgment is affirmed.