## Macpherson v. Bacon's Executor.

(Decided May 31, 1918.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Contracts—Ambiguity—Parol Evidence.—Ambiguous and uncertain expressions in the written evidence of a contract may be explained by parol or written evidence, to the end that the true meaning of the contract may be ascertained, without a plea of fraud or mistake.

2. Contracts—Writings Not Considered Part of.—Writings, although between the same parties and relating to the same subject matter, and executed near the same time, are not considered as a part of the contract, where the negotiations are finally merged into a written agreement and subscribed by all of the parties.

3. Attorney and Client—Dissolution of Partnership—Contracts.— The voluntary dissolution of a partnership, to practice law, does not relieve either partner from the obligations of a contract with a client, which had theretofore been entered into by the partnership.

4. Attorney and Client—Contract Made With Partnership—Survivor. —The contract, of a single lawyer to prosecute or defend a suit terminates at his death, but, a similar contract made with a partnership, for the practice of law, is different, in that the death of one partner does not relieve the survivor from his obligation to perform the partnership contract, and, although the client may treat the contract as ended, being liable to the partnership for its services, as upon a quantum meruit, if he accepts the services of the surviving partner in lieu of the partnership, or agrees or acquiesces in the survivor performing the contract in lieu of the partnership, the contract is not terminated.

5. Attorney and Client—Termination of Employment.—At the common law and at the present time, the employment of an attorney to prosecute or defend an action terminates with a final judgment in the court, in which the action is pending, and the attorney can not take an appeal from the judgment without new employment or the consent of his client, but this rule would not apply when the terms of the original employment authorized the taking of an appeal or other proper step to protect the client's rights.

ERNEST MACPHERSON and GEORGE A. BRENT for appellant.

H. H. NETTELROTH and E. J. BACON for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming upon both the original and cross appeals.

This suit is a kind of an aftermath of the litigation between the county of Green and the holders of its bonds, which were issued in aid of the construction of

the Cumberland & Ohio Railroad. The bonds were attempted to be issued, as a result of an election held in the county of Green, in accordance with the act of the general assembly, which incorporated the Cumberland & Ohio Railroad Company, upon the question whether the county court should make a subscription to the capital stock of the company in the sum of $250,000.00 to be paid for in the bonds of the county, which were to run twenty years and bear interest at the rate of six per centum per annum. The entire $250,000.00 of the bonds were issued and, thereafter, were sold, some of them to residents of the state of Kentucky and others to persons, who were non-residents. The county paid the coupons representing the interest on the bonds, until the year 1877, when it became patent, that the railroad company did not intend to carry out or perform the conditions upon which the subscription to the capital stock was voted and the bonds issued, and the county declined to any, further, pay the coupons. Several suits followed this declination, in the Federal courts, and resulted in judgments against the county upon a large number of the coupons. On November 15th, 1894, there was pending in the Green circuit court, a suit by F. L. Sidebottom against the county of Green upon certain bonds with their attached coupons. At the same time, there was pending in the Federal court, for the district of Kentucky, a suit instituted by John Thomas and others against the county of Green to recover a judgment upon certain bonds with their attached coupons. The county's defense to these actions, upon the merits of the controversy, was the same in each case or in any other action, that might be brought against the county to recover judgment upon any of the bonds or coupons. The defense was, that, in the application to the county court for the order to hold the election and in the order of the court which submitted the question to the voters of the county and in the orders, which subscribed for the stock, it was provided, that the subscription was agreed to upon the condition, that the railroad should be constructed through the county and within one mile of Greensburg, and the amount of the bonds, to be expended in the construction, within the county, and the bonds were not to be issued or paid by the county, until it should be exonerated by the company from liability upon a former subscription made to the Elizabethtown & Tennessee Rail-

road Company, none of which conditions had been or ever were performed by the Cumberland & Ohio Railroad Company, hence, a decision in either of the cases then pending or in any other suit, which might be brought against the county upon any of the bonds, upon the merits of the action, would determine the question of the county's liability upon all of the bonds. For the purpose of defending the actions of Sidebottom and Thomas and any other action that might be thereafter brought against the county, on account of any of the bonds, and to have the question of the county's liability upon the bonds determined, on the above mentioned date, a contract was entered into between the fiscal and county courts upon the one side and the firm of Bacon & Macpherson, Col. John W. Lewis and Judge D. T. Towles, all of whom were properly authorized attorneys at law, as the contracting parties upon the other side. This contract was set out in the order, which was made by the county and fiscal courts of Green county, and which is as follows:

"On motion it is ordered by the court that Bacon & Macpherson, Col. John W. Lewis and Judge D. T. Towles be and they are hereby employed to defend Green county in the suits of Sidebottom against Green county, pending in the Green circuit court, and the suit of John Thomas, et al. against Green county, pending in the circuit court of the United States, at Louisville, and any other suits that may be brought against Green county on account of the bonds issued in aid of the Cumberland & Ohio Railroad Company, under the following contract, to-wit: This contract made the 15th day of November, 1894, by and between the Green county and fiscal courts of the first part and D. T. Towles, John W. Lewis and Bacon & Macpherson, of the second part, WITNESSETH: That whereas there is now pending in the circuit court of Green county a certain suit against Green county wherein one Sidebottom is plaintiff, and in the circuit court of the United States for the sixth district of Kentucky a certain suit against Green county wherein one Thomas and others are plaintiffs, both of said suits being brought on bonds and coupons alleged to have been issued by said county in aid of the Cumberland & Ohio Railroad Company so called, and whereas said courts would regard as ruinous to said county the success of the plaintiffs in said cause, and

whereas the real questions presented in said causes involve a very large sum of money and affect and control the total liability of said county by reason of its issue of any and all bonds in aid of said road and whereas the said courts have adjudged it necessary to employ counsel to defend said suits, the said parties of the first part hereby employ and retain the second parties to defend said causes, and in consideration of their acceptance of said employment the said first parties agree and promise to pay the said second parties for their services as attorneys the sum of $1,200.00, a fee certain, no matter how said cases may result, and further agree to pay said attorneys a sum equal to five per centum of any amount of said bonds or any bonds issued by said Green county in aid of said railroad, which they may save said Green county or the first parties or as representatives or acting for said Green county in said duties or which may be controlled and settled by the decisions rendered in said causes or either of them, and second parties are to defend all suits that may be brought against said county on account of said bonds or coupons issued by said county in aid of said road. Witness the hands of the second parties and of the judge and of the justices of the peace of said Green county.''

Bacon & Macpherson was a partnership between Byron Bacon, deceased, and the appellant, Ernest Macpherson, for a general practice of law, and by the terms of the partnership, Bacon was to receive three-fifths and Macpherson two-fifths of the proceeds of the business of the partnership and were to bear the expenses and losses in the same proportion. This partnership continued until the 3rd day of June, 1897, when the contract of partnership was dissolved by a contract, which was upon that day entered into between Bacon and Macpherson, and which, as appears from the written evidence of the contract executed by them upon that day, was as follows:

"June 3, 1897,

"Byron Bacon, Esq.

"Esteemed Sir:

"My proposition in the matter of the firm of Bacon & Macpherson is that the firm will stand dissolved on and by the first day of June, 1897, you to attend to all of the business of the firm and that theretofore in which

I was interested by special employment, which came by, through or from your clients, I giving you my prompt and practical thorough co-operation and assistance therein as you may require, you to adjust and receive the fees and account to me therefor as I may be entitled thereto under our partnership agreement and our agreement theretofore; I to attend to all business of the firm or that in which I had theretofore and in which you were interested, which came by, through or from my clients, including the Green county bond cases and the R. N. I. & .B. R. R. Co. cases, and adjust, collect and receive the fees and account therefor to you in like manner as above.    Individual names of the firm are to be signed to all records where the partnership name has theretofore been signed, I forthwith to surrender up to you the office.

"(Signed) ERNEST MACPHERSON."

"Col. Ernest Macpherson,
"Esteemed Sir:
    "The above proposition is hereby accepted.
"(Signed) BYRON BACON."

It should be stated in explanation of the references in the above writing to causes in which either of these parties was interested before the creation of the partnership, that previous to that time, they occupied the same office and gave assistance in cases in which either of them was engaged and desired the services of the other under contract, which applied only to the particular case.

The action of Sidebottom against Green county, which was mentioned in the contract of the attorneys with Green county, was dismissed without prejudice to a future action by the plaintiff in the suit.    The case of Thomas and others against Green county, mentioned in the contract and which was pending in the Federal court, was decided by that court in favor of the county, but upon appeal to the Circuit Court of Appeals, the judgment was reversed and the case decided adversely to the county.    Hence, in neither of these actions was anything saved to the county by the services of the contracting attorneys.

Thereafter, in 1899, one Quinlan instituted a suit in the Federal court for the district against Green county to recover upon certain of the bonds, and this case upon

appeal to the Federal Circuit Court of Appeals was decided adversely to the county. Thereafter, a dispute having arisen between the contracting attorneys and the Green fiscal court as to the respective rights of the parties under the contract, an order was made by the Green fiscal court directing Lewis and Macpherson to apply to the Supreme Court for writs of *certiorari* in both the case of Quinlan against Green county and Thomas and others against Green county, the fiscal court undertaking to pay certain expenses and costs to which the attorneys would be subjected, but the compensation to be received by them for their services to be governed by the terms of the contract of November 15th, 1894. Upon the hearing upon the writs in the Supreme Court, the decision of the Circuit Court of Appeals with reference to the Thomas case was unchanged, but that in the case of Quinlan against Green county was modified so that there was saved to the county the sum of $12,444.02 in coupons.

At the time, the partnership of Bacon & Macpherson was dissolved and the contract of dissolution entered into, there was pending in the Green circuit court, an action by one Shortell against Green county to recover a judgment upon certain of the bonds and coupons. This suit was instituted in 1895, but nothing appears to have been done in it, until in March, 1898, when an answer was filed, which was signed by Macpherson, Lewis and Towles as attorneys. The case was dismissed in the Green circuit court because of a want of prosecution of it by the plaintiff. Shortell appealed to the Court of Appeals and secured a reversal of the judgment. Upon its return to the circuit court an amended answer was filed by Macpherson and Lewis, as attorneys, but a demurrer was sustained to the answer, as amended, and a judgment rendered by the circuit court, in favor of Shortell, adjudging him a recovery upon the bonds sued on. An appeal from the judgment was taken by the county to the Court of Appeals and upon this appeal the judgment was reversed, it being decided that the county was not liable for the payment of any of the bonds or coupons issued in aid of the construction of the railroad, and upon the case being remanded to the circuit court, the petition was dismissed and thereafter all other suits pending, by persons owning bonds, and, who resided within the state of Kentucky, were dismissed.

The result of this judgment was to save the county from the payment of any bonds, which would have to be sued upon in the courts of the Commonwealth of Kentucky, and the result of the litigation in the Federal courts was to adjudge the county liable for any bonds upon which suit would have to be brought in the Federal courts, which were then subsisting demands against the county and not barred by limitation or other reason.

Thereafter, Lewis and Macpherson instituted an action in the Green circuit court against the county to recover of it the compensation claimed to be due them under the contract of November 15th, 1894, and the litigation resulted in the recovery of a judgment by them against the county for the sum of $28,230.00, with interest thereon from the second day of December, 1912.

Byron Bacon died, testate, on the first day of April, 1900, and this action was instituted by the executor of his will to recover of appellant, Macpherson, three-fifths of the fees received by him for defending the suits against Green county heretofore mentioned. It appearing that no part of the judgment recovered by him against Green county had been paid, the court adjudged that he should assign to the executor of his deceased partner three-fifths of one-third of the recovery by the judgment, and from that judgment he has appealed to this court, while the executor of Bacon has prayed a cross-appeal and insists the court should have adjudged, that the appellant transfer three-fifths of one-half of the judgment against Green county to the executor, instead of three-fifths of one-third of it.

(a) Pending the negotiations between the members of the firm of Bacon & Macpherson for a dissolution of the partnership a letter was written by Bacon & Macpherson and two letters by Macpherson to Bacon. These writings were set up by appellant, in his answer, as part of the contract of dissolution, but the court sustained a motion to strike them from the answer and of this appellant complains. True, agreements in writing, executed at the same time, between the same parties and relating to the same subject matter, will be considered to make one contract, for the purpose of determining the meaning of the parties, though the agreements are contained in several instruments and though they do not bear the same date nor be absolutely contemporaneous

in execution. Park's Ex'or v. Cook, 3 Bush, 168; Smith
v. Theobald, 36 Ky. 41; Honore v. Hutchins, 8 Bush
687; C. N. O. & T. P. Ry. Co. v. Luke, 169 Ky. 560;
Early v. Douglas, 110 S. W. 813; Knott's Admr. v.
Hogan, 4 Met. 100. The letters preceding the contract,
in the instant case, however, do not contain any un-
qualified undertakings by either party. They merely
submit propositions by one party to the other, none of
which were accepted by either. The negotiations were
all merged in the final writing, which was subscribed by
each of them and which contains all the stipulations upon
either side. In such states of case the rule above stated
does not apply. It is likewise true, that, as is contended,
ambiguous and uncertain expressions in the written evi-
dence of a contract may be explained by parol evidence,
or as it seems by written evidence, to the end that the
true meaning of the contract may be ascertained, and
such may be done in the absence of a plea of fraud or
mistake. Crane v. Williams, 111 Ky. 271; Skaggs v.
Simpson, 110 S. W. 251; Westinghouse, etc. v. Green-
ville, etc., 169 Ky. 280. The writings, struck from the
answer of appellant, were not, however, excluded from
the evidence, and an inspection of them fails to shed
light upon any expression in the written contract. The
descriptive expression used in the contract with reference
to the matter in controversy here was, "business of the
firm . . . which came by, through or from my clients,
including the Green county bond cases . . . ." There
is no word of description or designation, in either of
the preceding letters, which would indicate that the par-
ties contemplated any particular Green county bond
case or intended to confine the "business of the firm
. . . which came by, through or from my (appellant's)
clients," to any particular "Green county bond case,"
but would seem to include all Green county bond cases in
which the firm had received employment.

Several other grounds of reversal are urged, which
will be considered in their order.

(1) It is contended that the contract with the fiscal
court, dated the 15th day of November, 1894, was the only
employment of Bacon & Macpherson, by Green county,
and that such contract did not employ the partnership
in the suits of Shortell against Green county and Quin-
lan against Green county, and that such were the only

suits in the defense of which the liability to pay any bonds was avoided by the county, and the right to demand any compensation from the county being contingent upon saving the county from liability upon the bonds and coupons, the right to the fees was not earned, in any suit, embraced by the contract with Bacon & Macpherson, as the Quinlan suit was not instituted until after the dissolution of the partnership, and, while the Shortell suit was instituted during the partnership, neither of the partners knew of its pendency until after the dissolution. This contention is not tenable, when it is considered that the order of the fiscal court recites that Bacon & Macpherson, Col. John W. Lewis and Judge D. T. Towles "be and are hereby employed to defend Green county," not only in the suits of Sidebottom and Thomas against the county, but, "and any other suits that may be brought against Green county on account of the bonds issued in aid of the Cumberland & Ohio Railroad Company." The contract further recites that the questions involved affect and control the entire liability of the county on account of the bonds, and further provisions are embraced in the contract, to the effect, that Bacon & Macpherson, Lewis and Towles are to defend the county in all suits which may be brought against it on account of the bonds. It is, also, provided that they are to receive a fee for their services, in addition to a retainer fee of $1,200.00, "five per centum of any amount of said bonds or any bonds issued by said Green county in aid of said railroad, which they may save said Green county or the first parties (Green county and county fiscal courts) or as representatives or acting for said county in said suits, or which may be controlled and settled by the decisions rendered in said causes or either of them . . ." Hence, the terms of the contract were sufficiently broad to embrace any suit brought for a recovery upon the bonds issued in aid of the railroads, whether then pending or thereafter to be instituted, and the real object contemplated by the parties was to secure a decision of the question of the county's liability, which would affect and control its entire liability upon all the bonds, whether they had been sued upon or not. This is the view which appellant took of the contract, as he and Lewis filed an action in the Green circuit court for the recovery of their fees and relied

solely upon the contract with the county, of date November 15th, 1894, as the basis of their right of recovery and, in such contention, they were sustained by the circuit court, and the judgment in which was approved by this court in Green county v. Lewis, et al., 157 Ky. 490. Hence, it seems that the firm of Bacon & Macpherson were employed in all the suits, which might be brought against the county, on account of the bonds, until a controlling decision was had.

(2) It is insisted by appellant, that Bacon's estate is not entitled to any portion of the fee, because Bacon withdrew from the cases, when the partnership was dissolved, and rendered no further services therein. This would doubtless be a sufficient answer from the county, if Bacon had simply refused to perform his contract with the county, without any justifying circumstance and then sought a recovery from it. So far as the county was concerned, the dissolution of the contract of partnership did not relieve Bacon from the covenants, which the firm had made to the county, as long as he lived, and the contract of dissolution does not indicate that Bacon intended to abandon the contract with the county and fail to perform it, in the event, that appellant failed to perform it. This defense could not avail appellant, because the county acquiesced, in the appellant performing the contract for his firm and appellant was doing so, under a contract with the partnership to the effect, that he would perform the obligations of the contract with reference to the "Green county bond cases" and would collect and pay to Bacon the portion of the fees to which he was entitled under the partnership contract, in consideration of Bacon performing the partnership contract and previous contracts made by them individually with other parties and collecting and paying to appellant the portion of the fees, to which he was entitled, under the partnership contract and previous contracts.

(3) It is, also, insisted that before the fees due from Green county had been earned, Bacon died, and the contract of employment, as attorneys being a personal one, that the contract with the county thereby terminated and that the services rendered for the county, which represented the fee, a portion of which is sued for, was earned by the appellant under a later contract, with which the decedent, Bacon, nor the firm of Bacon & Mac-

pherson had any connection. Where it can be gathered from a contract, that it was intended that a party should personally perform a certain covenant because of his skill or peculiar ability or the peculiar confidence reposed in him by the other, the contract expires with the death of such party. Schultz v. Johnson, Admr., 5 B. M. 497. If a lawyer is contracted with to perform services in the line of his profession, which require skill and knowledge of his business, there is no doubt that upon his death the contract terminates, as a personal representative, nor any one engaged by him, can be substituted for the deceased lawyer, whose personal services were contracted for. A somewhat different rule, however, applies where the services of a firm of lawyers are contracted for, although in McGill v. McGill, 2 Met. 258, the general expressions made use of by the court, as to the respective duties and liability of a client and a partnership for the practice of law, one of whose members should die, would seem to indicate that the same rule applied to a partnership, as with a single lawyer. The general trend of authority is to the effect that the death of one member of a partnership to practice the profession of law, does not relieve the surviving partner from performing a contract, which the partnership had made, and as said in Green county v. Lewis, et al., *supra*:

"When a party employs a firm of lawyers to represent him and one of them dies he is entitled to have the services of the surviving member, and if he is not satisfied with the ability of the surviving member to manage his case and feels that he ought to have additional counsel to take the place of the deceased member of the firm, he should make this request in seasonable time, etc."

One who, however, engages a firm of lawyers is entitled to the personal services and skill and ability of both, and if one should die the client may terminate the contract, but will be required to pay the value of the services up to that time, as upon a *quantum meruit*, where such rule is applicable. Hence, after the death of Bacon the county of Green was entitled, under its contract, to have the services of appellant, if it desired or it could have declared the contract at an end, but when it agreed to or acquiesced, as it did, in the performance of the firm contract by appellant, the contract did not

end and appellant having gone forward and performed the services and claimed and been adjudged a recovery of the fee under the contract with the firm, and because of such contract, long after the death of Bacon, can not now be heard to say that the contract expired at the death of Bacon and before any fee was earned. Green county v. Lewis, et al., *supra*; Concummins, 222 U. S. 262; Clifton v. Clark, 83 Miss. 446. The appellant carried out the contract with the county, under a contract with Bacon that when the fee was recovered, Bacon should have three-fifths of it.

(4) It is, also, contended by appellant, that, in as much as all the actions, which owners of the bonds and coupons brought against Green county, were either decided against the county or were dismissed without prejudice or else dismissed by the court for some reason, neither of them affected or controlled the liability of the county or saved the county from any liability, except the cases of Quinlan against Green county and Shortell against Green county, and that the first of the two latter cases was decided adversely to the county in the Federal Circuit Court of Appeals and the latter case was decided against the county in the circuit court of Green county; that the contingent fee, which is now the subject of this action, was not earned by appellant under the contract of Bacon & Macpherson with the fiscal court, as that contract ended with the adjudications above mentioned, and but for the appeal to this court, in the Shortell case, and the writ of *certiorari* in the Quinlan case there would have been no saving of the county from liability upon any of the bonds or coupons, and hence the contingent fee provided for under the contract with the fiscal court was never earned by any one. True, at the common law it was held that the authority of attorneys, who represented the parties in the original suit, if the authority was of the ordinary kind, it was at an end, when the first judgment was rendered, except that the attorney for the plaintiff had the right to enforce the judgment for a year and a day. Holbert v. Montgomery's Heirs, 5 Dana 11. It was held in Richardson v. Talbott, 2 Bib, 382, that a *scire facias* and a writ of error to reverse a judgment, whether from the same or a superior court, had always been deemed actions, which the attorneys obtaining the judgment could

not prosecute without new authority, and in the later case of Hey v. Simon, 29 R. 315, it was held by this court that, where an attorney was employed to bring an action, his authority ends with the final judgment in the case, and that he has no authority to take an appeal from the judgment without further employment or direction from his client. The appellant claims that in the Quinlan case a re-employment of him, alone, was made by the fiscal court, and that the same was done in the Shortell case by the county judge, individually, and not as a court. While, in the latter instance, the parol direction of the county judge could not be considered as making a new contract, neither the direction of the county judge, according to its terms, nor the order of the fiscal court in the matter of the writ of *certiorari* in the Quinlan case amounted to a re-employment of appellant under a new contract, but amounted to a consent to proceed under the contract under which appellant had been rendering services. While the rule stated in the cases, *supra,* doubtless applies to a contract with an attorney to simply prosecute to judgment or to defend an action, in a court of original jurisdiction, to its judgment, but, if the contract, in the first instance authorizes the prosecution of an appeal, the rule in the cases, *supra,* would not apply. Considering the circumstances surrounding the parties and the object which the parties had in view in making the contract of November 15th, 1894, and these circumstances may be considered (Mitchell v. Southern Ry. Co., 124 Ky. 146 as well as the language employed in the contract, it appears that the parties, when making the contract, did not contemplate that a final test of the subject of the litigation, which would be sufficient to determine the liability of the county upon the bonds, could be had by anything short of an appeal to a court of final jurisdiction, and hence the contract itself was sufficient to authorize the attorneys, so far as a contract for their services was concerned, to prosecute an appeal from the circuit court to this court in the Shortell case or to apply for a writ of *certiorari* in the Quinlan case.

A sufficient answer, it seems, to all of the foregoing grounds of reversal, is that in the petition filed by appellant and John W. Lewis against Green county for the recovery of the judgment for the fees in controversy, the contract of Bacon & Macpherson with the Green

fiscal and county courts on November 15th, 1894, was fully set out and it was specially alleged that the services rendered by them, in the Quinlan and Shortell cases, as well as all other services rendered by them in representing the county in the litigation about the county bonds, was under and by virtue of the contract, and that they were entitled to the contingent fee provided for in the contract and, upon this basis and no other, recovered the judgment. It is also alleged that Bacon had died, but that appellant had acted as one of the attorneys and had been accepted by the county in lieu of the firm of Bacon & Macpherson, and that his services had been rendered under the contract and no mention was made of any other employment which he had touching Green county.

(b)   The contention of appellee that the judgment should have been for three-fifths of one-half of the judgment of Lewis and appellant against Green county, instead of three-fifths of one-third of it, is not tenable The original contract and the only one under which appellee could make any claim entitled the firm of Bacon & Macpherson to only one-third of the contingent fee earned.   The fact that after the death of Bacon, Towles, by an arrangement with the fiscal court, was released from any further obligation under the contract to continue the defense of the county, and then transferred or assigned his interest under the contract to the appellant and John W. Lewis would not increase the rights of appellee, as the representative of Bacon, to an additional amount of the fee, because the assignment of Towles was not to the firm of Bacon & Macpherson, but to Macpherson and Lewis.

The judgment is therefore affirmed upon the original and cross appeals.